**EXHIBIT 1**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JACOB MEYER, individually and on behalf of all others similarly situated** | § § § | **Docket No. 4:14-cv-01490** |
| **Plaintiff,** | § § | **JURY TRIAL DEMANDED** |
| **vs.** | § § | **COLLECTIVE ACTION** |
| **PHOENIX TECHNOLOGY SERVICES USA INC.** | § § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| | § § § | |
| **Defendant.** | § | |

## SETTLEMENT AGREEMENT AND RELEASE

1.      This Settlement Agreement and Release (the "Settlement Agreement," "Settlement" or "Agreement") is entered into between Plaintiff Jacob Meyer ("Meyer") and Phoenix Technology Services, USA Inc. ("Phoenix") (collectively, the "Parties"), subject to the approval of the Court.

## RECITALS

2.      On May 28, 2014, Meyer commenced an action by filing a Collective Action Complaint in the United States District Court for the Southern District of Texas Houston Division captioned *Jacob Meyer v. Phoenix Technology Services, USA, Inc.*, No. 4:14-cv-01490.

3.      Meyer, individually and on behalf of the Settlement Class (as defined below), and the Plaintiffs in the Actions (as defined below) assert that Defendant (as defined below) failed to pay proper overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and state laws related to the payment of wages.

4.      On September 3, 2015, the Parties participated in mediation before an experienced mediator, William H. Lemons.  Pursuant to the mediation and the Parties' agreed-upon alternative dispute resolution ("ADR") process, Defendant provided Class Counsel (as defined below) with voluminous electronic and hardcopy payroll records, timesheets and applicable policies, which Class Counsel reviewed and analyzed prior to the mediation.

5.      As a result of the mediation and subsequent arms'-length negotiations overseen by the mediator, the Parties have agreed to settle the Actions according to the terms of this Settlement Agreement.

6.     Class Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in the Actions.  In agreeing to this Settlement Agreement, Class Counsel has considered:  (a) the facts developed during discovery and the Parties' ADR process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against Defendant; and (c) the desirability of consummating this Settlement according to the terms of this Settlement Agreement.  Meyer and Class Counsel have concluded that the terms of this Settlement are fair, reasonable and adequate, and that it is in the best interests of Meyer and the Settlement Class to settle their claims against Defendant pursuant to the terms set forth herein.

7.     Defendant denies the allegations asserted and denies that they engaged in any wrongdoing or violation of law.  Defendant is entering into this Agreement because it will eliminate the burden, risk, uncertainty, and expense of further litigation.  Except for purposes of this Settlement, neither this Agreement nor any document referred to herein, nor any action taken to carry out this Agreement, may be used in any way as an admission, concession or indication by or against Defendant of any fault, wrongdoing or liability whatsoever, including any concession that certification of a class other than for purposes of this Settlement would be appropriate in the Actions or any other case.

8.     The Parties recognize that notice to the Settlement Class of the material terms of this Settlement, as well as Court approval of this Settlement, are required to effectuate the Settlement, and that the Settlement will not become operative until the Court grants approval of it and the Settlement becomes effective.

9.     The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met.  Should this Settlement not become final, such stipulation to collective action certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

10.     In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Meyer and the Eligible Class Members' (as defined below) claims against Defendant shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions set forth below.

## DEFINITIONS

11.     The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a.      "Meyer Action" means the lawsuit filed by Meyer against Phoenix Technology Services USA, Inc. in the United States District Court for the Southern District of Texas, Houston Division with Docket Number 4:14-cv-01490.

b.      "Bechtloff Action" means the lawsuit filed by Eric Bechtloff against Phoenix Technology Services USA, Inc. in the United States District Court for the Southern District of Texas, Houston Division with Docket Number 4:15-cv-483.

c.      "Lindsey Action" means the lawsuit filed by Craig Lindsey against Phoenix Technology Services USA, Inc. in the United States District Court for the Western District of Pennsylvania with Docket Number 1:15-cv-149.

d.      "Actions" collectively means the Meyer Action, the Bechtloff Action, and the Lindsey Action.

e.      "Approval Order" means the Court's Final Approval Order approving the Settlement and entering judgment.

f.      "Approval Hearing" means the hearing to be held by the Court to consider the approval of the Settlement.

g.      "Class Counsel" means Fibich, Leebron, Copeland, Briggs & Josephson and Bruckner Burch PLLC.

h.      "Class Period" means the earlier of September 2012 through December 31, 2014 or three years from the date any individual opted-in to the *Meyer* lawsuit through December 31, 2014.

i.      "Court" means the United States District Court for the Southern District of Texas Houston Division.

j.      "Phoenix's Counsel" means the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

k.      "Defendant" means Phoenix

l.      "Eligible Class Member" means all Settlement Class Members who timely opt-in to the Settlement Class.

m.      "Effective Date" means the first business day following the Court's approval of the Settlement.

n.      "Fee Award" means the award of attorneys' fees that the Court authorizes to be paid to Class Counsel for the services they rendered in the underlying lawsuit.

o.       "Gross Settlement Amount" means the maximum amount that Defendant shall pay in exchange for the release of all Released Claims (as defined below) by Meyer, Craig Lindsey ("Lindsey"), and Eric Bechtloff ("Bechtloff") and the Eligible Class Members, which is

the sum of five million dollars ($5,000,000.00), excluding the employers' share of FICA and FUTA payroll taxes. In no event shall the Gross Settlement Amount exceed this sum, plus the employers' share of FICA and FUTA payroll taxes on the amounts paid to Meyer, Lindsey, and Bechtloff and the Eligible Class Members.

   p. "Net Settlement Amount" means the Gross Settlement Amount less: (i) up to $22,500.00 to be divided by three as Service Awards for Meyer, Lindsey, and Bechtloff for their efforts in bringing and prosecuting the lawsuits against Defendant and moreover, in exchange for their additional Released Claims executed in favor of Defendant as set forth in Paragraph 12(a), below; (ii) the payment of attorneys' fees to Class Counsel, not to exceed $1,750,000.00, which is approximately thirty-five percent of the Gross Settlement Amount, plus the payment of out-of-pocket costs incurred by Class Counsel, which currently are $18,497.58; and (iii) the Settlement Administrator's (as defined below) costs related to administering this Settlement, which are estimated not to exceed $11,500.00. The Parties acknowledge that all of these amounts are subject to the Court's approval.

   q. "Notice Deadline" means the date ninety (90) days after the Notice of Settlement and the Settlement Consent Form are initially mailed by the Settlement Administrator to the Settlement Class. Settlement Class Members shall have until the Notice Deadline to submit their Settlement Consent Form.

   r. "Notice of Settlement" means the notice to the Settlement Class substantially in the form as Exhibit A attached hereto or as approved by the Court.

   s. "Parties" means Meyer, and Phoenix.

   t. "Plaintiff" or "Meyer" mean Jacob Meyer.

   u. "Released Claims" means any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, that have been asserted or could have been asserted against Releasees for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA, the Pennsylvania Minimum Wage Act, or any other state or local wage-related law applicable to the allegations asserted in the Actions and which emanate from and are based upon the same facts alleged in the Actions on behalf of Meyer and the Settlement Class with respect to the time that they were employed by or working for Defendant during the Class Period. The Parties acknowledge that only Settlement Class Members who return a Settlement Consent Form and thereby become opt-in plaintiffs shall release their FLSA and state or local wage and hour law claims against Releasees.

   v. "Releasees" means Defendant and their past, present and future parent companies (including, but not limited to, PHX Energy Services Corp.), subsidiaries, predecessors, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.

w.    "Settlement Administrator" means ILYM, subject to the approval of the Court.

x.    "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of this Agreement.

y.    "Settlement Class" or "Settlement Class Member" means: All individuals who have joined *Meyer v. Phoenix* as of September 4, 2015, all current and former MWDs employed by Phoenix at any time during the period September 4, 2012 through December 31, 2014, and Eric Bechtloff, William Kelly, and Larry T. LaGarce.

z.    "Settlement Consent Form" means the form attached hereto as Exhibit B, subject to the approval of the Court.

## RELEASES

12.    **Release**.  In consideration of the benefits to be received by Meyer, Lindsey and Bechtloff and the Eligible Class Members under this Settlement, upon the Effective Date:

a.    Plaintiff Meyer, Lindsey and Bechtloff shall sign a separate General Release releasing and forever discharging Releasees from any and all Released Claims, and, in addition, shall be deemed to have released Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Worker Adjustment and Retraining Notification Act; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour (including, but not limited to, the FLSA and the Pennsylvania Minimum Wage Act), whistleblower, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Actions, any claim for breach of contract, contract or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees, based upon any conduct occurring up to and including the date of the Court's Approval Order, however claims for workers compensation are excluded from the scope of this release;  and

b.    Each Eligible Class Member shall be deemed to have released and discharged the Releasees from the Released Claims.

## <u>CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION</u>

13.     The Parties agree to the following procedures for obtaining approval of the Settlement, certifying the Settlement Class for the purpose of settlement only, and notifying the Settlement Class of this Settlement:

a.     **<u>Request for Class Certification and Approval Order</u>**.  By September 30, 2015, Meyer shall file a Motion for Approval of Settlement Agreement, requesting that the Court approve the Settlement, certify the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only, and approve the proposed Notice and Claim forms attached hereto as Exhibits A and B.

b.     <u>Notice</u>.  The Settlement Administrator shall be responsible for preparing, printing and mailing the Notice of Settlement and Settlement Consent Form to all Settlement Class Members.

c.     Within ten (10) business days after the Approval Order, the Parties shall provide the Settlement Administrator with the names, last known addresses, last known telephone numbers, last known email addresses (if applicable), social security numbers, dates of employment, and number of workweeks that each Settlement Class Member worked for Defendant during the Class Period. The Parties shall also provide the Settlement Administrator with an agreed estimated damages breakdown for each Settlement Class Member.

d.     In order to provide the best notice practicable, the Settlement Administrator, prior to mailing the Notice of Settlement and Settlement Consent Form, will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA").

e.     Within ten (10) business days after receiving the Class List, the Settlement Administrator shall send copies of the Court-approved Notice of Settlement and Settlement Consent Form to all Settlement Class Members via U.S. first class mail, with an enclosed self-addressed postage prepaid return envelope.  The Settlement Administrator shall also email the Notice of Settlement and Settlement Consent Form to all Settlement Class Members.

f.     Any Notice of Settlement and Settlement Consent Form returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within five (5) business days following receipt of the returned mail.  If any Notice of Settlement and Settlement Consent Form is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address within five (5) business days, and shall re-mail the Notice of Settlement and Settlement Consent Form to any newly found addresses within five (5) business days of finding the new address(es).  If any Notice of Settlement and Settlement Consent Form is returned without a forwarding address and the Settlement Administrator's reasonable efforts do not reveal a correct address within the period provided above, the Settlement Administrator shall use the provided phone numbers for such Settlement Class Members to contact such persons to obtain their correct addresses.  Once obtained, the

6

Settlement Administrator shall re-mail the Notice of Settlement and Settlement Consent Form to any newly provided addresses within five (5) business days of learning the new address(es).

g.     Reminder notices and emails containing the Notice of Settlement and Settlement Consent Form shall be mailed and emailed to all Settlement Class Members 30 days, 60 days, and 80 days after the initial notice is sent as provided in Section 13(e) above.

h.     Nothing in this Agreement shall limit Defendant's right and ability to communicate with their current employees, including those who are Settlement Class Members, regarding their wages or other terms and conditions of employment.  Defendant may communicate with their current employees who are Settlement Class Members for the purpose of encouraging them to participate in the Settlement, so long as such communications are consistent with this Settlement Agreement.

14.     **Interim Report by the Settlement Administrator**.  Within five (5) business days after the Notice Deadline, the Settlement Administrator shall confirm: (a) the total number of Settlement Class Members who were sent the Notice of Settlement and Settlement Consent Form; and (b) the total number of Settlement Class Members who timely returned the Settlement Consent Form.

15.     **Dismissal of the Lindsey and Bechtloff Actions**.  On or before five (5) business days after the Notice Deadline, Class Counsel shall dismiss *Lindsey v. Phoenix Technology Services USA, Inc.* and *Bechtloff v. Phoenix Technology Services USA, Inc.* with prejudice.

## SETTLEMENT FUNDS AND AWARD CALCULATION

16.     **Gross Settlement Amount**.

a.     **Funding**.  Defendant shall wire the Gross Settlement Amount to the Settlement Administrator in accordance with the following payment plan:  1st Payment of $1,666,666.60 on the latter of November 2, 2015 or within three (3) days of the Court approving the Settlement; 2nd Payment of $1,666,666.60 on January 2, 2016; and 3rd Payment of $1,666,666.60 on January 31, 2016. Upon receipt by the Settlement Administrator, these funds shall be transferred immediately to a Qualified Settlement Fund.

b.     **Disbursement by Settlement Administrator**.  All disbursements shall be made from the Qualified Settlement Fund.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund.

c.     **Interest**.  The interest on the funds deposited by Defendant will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

17.     **Payments**.  Subject to the Court's Approval Order, the following amounts shall be paid by the Settlement Administrator from the Gross Settlement Amount:

a.     **Service Awards to Meyer, Lindsey and Bechtloff**.  Subject to the Court's approval, Meyer, Lindsey and Bechtloff shall each receive up to seven thousand, five

hundred dollars ($7,500.00) for their efforts in bringing and prosecuting the Actions, and in consideration of their general release set forth above in Paragraph 12(a).  The Qualified Settlement Fund shall issue an IRS Form 1099 for these payments. Meyer, Lindsey and Bechtloff shall each be solely and legally responsible for all taxes on the Service Awards.  These payments shall be made within seven (7) business days after the Notice Deadline.

        b.      **Attorneys' Fees and Costs**.

        (i)      Subject to the Court's approval, Class Counsel shall receive attorneys' fees in an amount up to one-million, seven hundred and fifty thousand dollars 00/100 ($1,750,000.00) of the Gross Settlement Amount, which will compensate Class Counsel for all work performed in the Actions as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Actions.  In addition, Class Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court.  These payments of attorneys' fees and costs shall be made by February 3, 2016.

        (ii)      The attorneys' fees and costs paid by Defendant out of the Gross Settlement Amount deposited with the Settlement Administrator pursuant to this Agreement shall constitute full satisfaction of Defendant's obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in the Actions on behalf of Meyer, Lindsey, Bechtloff, and/or any Settlement Class Member, and shall relieve Defendant from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Meyer, Lindsey, Bechtloff, or any Settlement Class Member.

        (iii)      An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel.  Each firm constituting Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

        c.      **Settlement Administration Costs**.  Settlement Administration costs are estimated not to exceed $11,500.00 and shall be paid from the Gross Settlement Amount.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs incurred in the administration of the Settlement.

        d.      **Settlement Awards to Eligible Class Members.**  Settlement Awards shall be made to Eligible Class Members as set forth below.

### CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS

        18.      **Settlement Award Eligibility**.  All Eligible Class Members shall be paid a Settlement Award from the Net Settlement Amount.  The Settlement Administrator will calculate an award for each Settlement Class Member based on the total number of weeks that the respective Settlement Class Member worked for Defendant during the Class Period.  The total number of settlement shares for all Settlement Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.

That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award. All Settlement Award determinations shall be based on Defendant's payroll and workweek information for Settlement Class Members which shall be produced to the Class Counsel and the Settlement Administrator.

19.     Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment tax withholding as required by law with respect to 50% of each Settlement Award distributed, and Defendant shall pay the employer's share of all required FICA and FUTA taxes on such amounts. Withholding shall be at the 25% supplemental wage tax rate. Defendant shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Eligible Class Members, in addition to the Gross Settlement Amount. Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities on behalf of Defendant and the Eligible Class Members. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes. Each Eligible Class Member shall be solely and legally responsible to pay all taxes on the non-wage penalties and liquidated damages portion of the Settlement Award. Defendant shall cooperate with the Settlement Administrator to provide payroll tax information as necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the IRS Form 1099 reporting for the non-wage portion of each Settlement Award.

20.     The Settlement Administrator shall provide counsel for the Parties with a final report of all proposed Settlement Awards, at least ten (10) business days before the Settlement Awards are mailed.

21.     The Settlement Administrator shall mail all Settlement Awards to Eligible Class Members within twenty (20) days after the 3rd Payment of $1,666,666.60 or as soon as reasonably practicable. The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties within five (5) business days of mailing all Settlement Awards to Eligible Class Members.

22.     All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. All funds from checks not cashed will revert to the Qualified Settlement Fund. The Settlement Administrator will include with each mailed check a letter stating that the check must be cashed or deposited within 180 days or it will be cancelled and deemed void and of no further effect.

23.     **Remaining Monies**. If at the conclusion of the 180-day check void period set forth above, there are any monies remaining in the Qualified Settlement Fund, those monies shall be returned to Defendant.

## MISCELLANEOUS

9

24.    **Defendant's Legal Fees.**  Defendant's legal fees and expenses shall be borne by Defendant.

25.    **Nullification of the Settlement Agreement.**  In the event: (a) the Court does not preliminarily or finally approve the Settlement as provided herein; or (b) the Settlement does not become final for any other reason, this Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement.  If this occurs, the Parties shall proceed in all respects as if the Agreement had not been executed, and the Parties will pay the Settlement Administrator's costs incurred as of the date the Settlement becomes null and void, with each Party paying one-half of the costs.

26.    **Inadmissibility of Settlement Agreement.**  Except for purposes of settling the Actions, neither this Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

27.    **Computation of Time.**  For purposes of this Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

28.    **Interim Stay of Proceedings.**  The Parties agree to hold in abeyance all proceedings, except such proceedings necessary to implement and complete the Settlement.

29.    **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

30.    **Entire Settlement Agreement.**  This Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  All prior or contemporaneous negotiations, memoranda, agreements (including without limitation the Stipulation Regarding Settlement), understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect.  Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

31.    **Authorization to Enter Into Settlement Agreement.**  Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement.  In the event that the Parties are

unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of the mediator, William H. Lemons first, or if he cannot resolve the matter, the Court to resolve such disagreement.

32.     **Counterparts.**  This Agreement may be executed in one or more counterparts, including by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

33.     **Cooperation and Drafting.**  The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties.  The Parties agree that the terms and conditions of this Agreement were negotiated at arms' length and in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

34.     **Jurisdiction of the Court.**  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for this purpose.

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF's**
**COUNSEL:** _____     Date: __9|30__, 2015

Michael A. Josephson
State Bar No. 24014780
Andrew Dunlap
State Bar No. 24078444
Lindsay R. Itkin
State Bar No. 24068647
Fibich, Leebron, Copeland, Briggs & Josephson
1150 Bissonnet
Houston, Texas 77005

and

Richard J. (Rex) Burch
State Bar No. 24001807
Bruckner Burch PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046

11

**DEFENDANT:**

_____    Date: _Sept 30_, 2015
Phoenix Technology Services USA, Inc.


**PHOENIX's
COUNSEL:**

_____    Date: _Sept. 30_, 2015
Merritt B. Chastain, III
Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
State Bar No. 00793491
500 Dallas Street, Suite 3000
Houston, Texas 77002

# EXHIBIT A

**THIS IS A COURT-AUTHORIZED NOTICE**
**\*\*\*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER\*\*\***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JACOB MEYER, individually and on behalf of all others similarly situated** | § | |
| | § | |
| | § | **Docket No. 4:14-cv-01490** |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **vs.** | § | |
| | § | **COLLECTIVE ACTION** |
| **PHOENIX TECHNOLOGY** | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| **SERVICES USA INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**NOTICE OF SETTLEMENT**
**PLEASE READ THIS NOTICE CAREFULLY**

A proposed settlement (the "Settlement") in the amount of $5,000,000.00 has been reached in the collective action lawsuit currently pending in the United States District Court for the Southern District of Texas (Houston Division) captioned *Jacob Meyer v. Phoenix Technology Services USA, Inc. ("Meyer Lawsuit")*   Because you work or worked as an MWD Operator ("Measurement While Drilling") for Phoenix Technology Services USA, Inc. ("Phoenix") during the relevant Class Period, your rights may be affected by this Settlement.  Regardless of whether you originally chose to opt-into the *Meyer Lawsuit*, based upon Phoenix's records, you are entitled to receive money under the Settlement.

This Notice of Settlement contains important information concerning your rights and explains the lawsuit, the terms of the Settlement, and your rights and obligations under the Settlement. This Notice should not be understood as an expression of any opinion by the Court as to the merits of any of the claims or defenses asserted by the parties in the Litigation.

**INTRODUCTION AND DESCRIPTION OF THE LAWSUIT**

On May 28, 2014, Jacob Meyer ("Meyer") a former salaried MWD filed this collective action lawsuit on behalf of himself and all other individuals who were employed by Phoenix Technology Services USA, Inc. ("Phoenix") as MWDs who were paid a base salary and day-rate with no overtime compensation during the earlier of three years prior to the date your consent was filed if you joined the Meyer lawsuit prior to September 5, 2015 or September 4, 2012

1

through December 31, 2014 ("Class Period").  Meyer alleges that Phoenix's MWDs should have been classified as non-exempt employees and paid overtime compensation under the federal Fair Labor Standards Act ("FLSA"). Phoenix denies these allegations.

On September 3, 2015, after months of discussions, exchanges of information, and negotiations, Meyer, his counsel, and Phoenix, and its counsel reached a proposed settlement.

The parties disagree as to the probable outcome of the lawsuit with respect to liability and damages if it were not settled.  While Meyer was prepared to proceed with litigating the case described above, Meyer recognizes that litigation is risky and that he may not have prevailed on his claim.  Likewise, Phoenix recognizes the risks, distractions, and costs involved with any litigation.

This Settlement is the result of good-faith, arms'-length negotiations between Meyer and Phoenix through their respective attorneys.  The parties agree that in light of the risks, uncertainties, and expenses associated with continued litigation, this Settlement is fair and appropriate under the circumstances, and in the best interests of the Settlement Class Members.

The Court has approved the settlement and authorized this Notice of Settlement to be distributed to the Settlement Class Members, which includes you.

## WHO IS AFFECTED BY THE PROPOSED SETTLEMENT?

You are receiving this Notice because you were identified as a salaried MWD who was or is employed by Phoenix during the relevant time period.  If you participate in this Settlement by timely submitting the Settlement Consent Form, you will receive a Settlement Payment.

## WHAT ARE YOUR OPTIONS?

You can choose to: (1) participate in the Settlement and receive a Settlement Payment by returning a Settlement Consent Form; (2) do nothing and receive no compensation.

## HOW CAN YOU PARTICIPATE IN THE SETTLEMENT
## AND HOW MUCH CAN YOU EXPECT TO RECEIVE?

Phoenix will pay an amount not to exceed $5,000,000.00 into a fund administered by a Claims Administrator.  After subtracting the Administrative Costs related to the Settlement, attorneys' fees and lawsuit costs for the Class Counsel representing the Class Members, and Service Awards, the remaining Net Settlement Amount will be divided by the total number of eligible workweeks worked by all of the Settlement Class Members during the Class Period and distributed on a pro-rata basis to all Settlement Class Members based on the number of weeks each Settlement Class Member worked during the relevant time period.

The estimated amount of your Settlement Payment is explained in the attached Settlement Consent Form.

In order to receive a Settlement Payment, **you must** complete, sign, and mail the enclosed Settlement Consent Form to the Claims Administrator at the address listed below.  Your Claim and Consent to Join Settlement Form must be postmarked by [**INSERT DATE**].  Late Settlement Consent Forms may or may not be honored at the sole discretion of Phoenix.

The Claims Administrator is ILYM.  Settlement Consent Forms sent to the Claims Administrator should be sent in the enclosed postage-paid envelope, or in an envelope addressed as follows:

Phoenix Settlement Administration
c/o ILYM Group, Inc.
P.O. Box 57087
Irvine, CA 92618

**To be effective, the Settlement Consent Form must be completed in full and signed.**

If you lose or misplace your Settlement Consent Form, a copy of the Settlement Consent Form may also be obtained by contacting the Claims Administrator at the above address.

### WHAT HAPPENS IF I ACCEPT A SETTLEMENT PAYMENT

By signing the Settlement Consent Form and accepting the Settlement Award, you are agreeing to release Phoenix and their past, present and future parent companies (including, but not limited to, PHX Energy Services Corp.), subsidiaries, predecessors, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers ("Releasees") from any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA or any other state or local wage-related law (including, but not limited to the Pennsylvania Minimum Wage Act) applicable to the allegations asserted or which could have been asserted in the lawsuit through December 31, 2014.

### NO RETALIATION

Phoenix will not take any adverse action against current or former employees who either choose to participate in the Settlement or decide not to do so.

### TAXES

For tax reporting purposes, any payments made pursuant to the Settlement shall be allocated as follows:  (a) fifty percent (50%) shall be deemed payment in settlement of claims for unpaid wages; and (b) fifty percent (50%) shall be deemed payment in settlement of alleged claims for penalties, liquidated damages, interest, and all other non-wage recovery.  With respect to the

3

portion of payment allocated to the settlement of claims for unpaid wages, such portion will be subject to required withholdings and deductions by the Claims Administrator and will be reported as wage income on a Form W-2 to be issued by the Claims Administrator, and such other state or local tax reporting forms as may be required by law.  With respect to the portion of payment allocated to the settlement of claims for non-wage recovery, such amounts will not be subject to withholding or deduction and will be reported as non-wage income on a Form 1099 or equivalent to be issued by the Claims Administrator, and such other state or local tax reporting forms as may be required by law.

If you have any questions regarding the tax treatment of any payments pursuant to the Settlement, you should consult your own tax advisor.

## WHAT IF YOU HAVE QUESTIONS?

This Notice only summarizes the Litigation, the Settlement, and related matters.  For more information about the Settlement or if you have any questions regarding the Settlement, you may contact the Claims Administrator at:

Phoenix Settlement Administration
c/o ILYM Group, Inc.
P.O. Box 57087
Irvine, CA 92618
Telephone: (888) 250-6810

You may also contact the attorneys for the Settlement Class Members in the Litigation.  Here is their contact information:

| | |
|---|---|
| Michael A. Josephson | Richard J. Burch |
| Fibich, Leebron, Copeland, | Bruckner Burch, PLLC |
| Briggs & Josephson | 8 Greenway Plaza, |
| 1150 Bissonnet Street | Suite 1500 |
| Houston, TX 77005 | Houston, Texas 77046 |
| Toll Free: 888-751-7050 | Telephone: (713) 877-8788 |
| Telephone: (713) 751-0025 | Facsimile: (713) 877-8065 |
| Facsimile: (713) 750-0030 | rburch@brucknerburch.com |
| mjosephson@fibichlaw.com | |

# **EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JACOB MEYER, individually and on behalf of all others similarly situated** | § § | |
| | § | **Docket No. 4:14-cv-01490** |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **vs.** | § | |
| | § | **COLLECTIVE ACTION** |
| **PHOENIX TECHNOLOGY** | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| **SERVICES USA INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**<u>SETTLEMENT CONSENT FORM</u>**

According to Phoenix's records, you were employed by Phoenix as a salaried MWD _____weeks during the applicable Class Period (defined above). Based on the number of weeks you were employed, your Settlement Award based on your pro rata share of the Net Settlement Amount is estimated to be $_____. This is only an estimate.

**TO BE ELIGIBLE TO RECEIVE ANY MONEY FROM THE SETTLEMENT, YOU MUST COMPLETE AND SIGN THIS CONSENT FORM AND SEND IT TO THE SETTLEMENT ADMINISTRATOR:**

Phoenix Settlement Administration
c/o ILYM Group, Inc.
P.O. Box 57087
Irvine, CA 92618
Telephone: (888) 250-6810

**NO LATER THAN _____ [SETTLEMENT CONSENT FORM DEADLINE].**

If you have any questions about completing this Settlement Consent Form, please contact the Claims Administrator at ************ or Class Counsel, Michael A. Josephson, Fibich, Leebron, Copeland, Briggs & Josephson, 1150 Bissonnet, Houston, Texas 77005, Telephone: 888-751-7050; Email: mjosephson@fibichlaw.com or Richard J. (Rex) Burch, Bruckner Burch PLLC, 8 Greenway Plaza, Suite 1500, Houston, Texas 77046, Telephone: (713) 877-8788, Email: rburch@brucknerburch.com.

By signing, dating, and submitting this Settlement Consent Form, you will be eligible to receive a Settlement Award as described in the attached Notice of Settlement ("Notice"), the terms, conditions, and releases of which are expressly incorporated herein by reference, and in accordance with the parties Settlement Agreement and Release. You may use the enclosed

addressed, pre-paid envelope to mail your Settlement Consent Form.  This is the address/contact information we have on file for you:

        [Class Member Name]
        [Class Member Street Address]
        [Class Member City, State Zip Code].

 If your current address is different, please provide it in the space below:

Name:       _____

Address:   _____

Address:   _____

Phone:     _____

Email:      _____


By your signature below, you understand that you will have been deemed to have consented to join the referenced lawsuit and consented to assert any and all such claims in this litigation pursuant to Section 216(b) of the Fair Labor Standards Act and any state or local wage and hour laws.  You also certify that you worked for Phoenix during the applicable Class Period.  You understand that in order to receive payment you will be releasing the claims described in the attached Notice, the terms, conditions, and releases of which are expressly incorporated herein by reference.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:_____                  _____
                                   Signature